UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET |
| VERSUS | * | NO. 02-277 |
| RONNIE MERRILL | * | SECTION "L" (5) |

<u>ORDER & REASONS</u>

Before the Court is the Petitioner's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Rec. Doc. No. 275).  For the following reasons the motion is DENIED.

I.      BACKGROUND

On September 19, 2002, a Federal Grand Jury returned a fifteen count indictment as to Ronnie Merrill ("Petitioner") and six co-defendants, for narcotics offenses in violation of Title 21 of the United States Code (the "Indictment").  Specifically, the Indictment charged the Petitioner with the following: conspiracy to distribute, and possess with the intent to distribute, one kilogram or more of heroin, a Schedule I drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846 (Count One); knowingly and intentionally distributing five (5) grams or more but less than fifty (50) grams of cocaine base ("crack"), a Schedule II narcotic drug controlled substance, and less than 100 grams of heroin, a Schedule I drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B) and 841(b)(1)(C) (Count 12); knowingly and intentionally possessing with the intent to distribute one (1) kilogram or more of heroin,  a Schedule I drug controlled substance, and less than  five (5) grams of cocaine base ("crack"), a Schedule II narcotic drug

1

controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 841(b)(1)(C) (Count 15).[1]  The Petitioner was arraigned on September 30, 2002, and plead not guilty to all counts.[2]

The Petitioner filed a Motion to Suppress Evidence, and Knock and Announce Violation.[3]  In his motion, the Petitioner argued that all of the evidence seized from 4703 ½ Baudin Street was not seized in accordance with Constitutional requirements that police officers knock and announce their presence and purpose in effectuating a search warrant.  The Court, in an Order & Reasons dated February 7, 2003, denied the Petitioner's motion.[4]

Pursuant to a plea agreement, the Petitioner plead guilty to Counts 12 and 15 of the Indictment on March 26, 2003.[5]  Petitioner's plea agreement contained the following waiver:

> The defendant hereby expressly waives the right to appeal his sentence on any ground, including but not limited to any appeal right conferred by Title 18, United States Code, Section 3742 on the defendant, and the defendant further agrees not to contest his sentence in any post-conviction proceeding, including but not limited to a proceeding under Title 28, United States Code, Section 2255.  The defendant, however, reserves the right to appeal the following: (a) any punishment in excess of the statutory maximum, and (b) any punishment to the extent it constitutes an upward departure from the Guideline range deemed most applicable by the sentencing court.[6]

---

[1]	Rec. Doc. No. 1.

[2]	Rec. Doc. No. 17.

[3]	Rec. Doc. No. 61.

[4]	Rec. Doc. No. 86.

[5]	Rec. Doc. No. 101.

[6]	Rec. Doc. No. 102, p. 2.

The Petitioner also signed a factual basis detailing what facts the government would have proved beyond a reasonable doubt.[7]

After his rearraignment, but prior to sentencing, the Petitioner discharged his attorney and retained new counsel.[8]   The Petitioner moved to determine his competency to stand for sentencing.[9]   The Court granted the Petitioner's motion and ordered that the Petitioner receive a psychiatric examination, and after such evaluation, the Court would schedule a hearing to determine the Petitioner's mental competency.[10]   After a hearing on February 4, 2003, the Court found the Petitioner competent to stand for sentencing.[11]

On February 18, 2004, the Petitioner moved to withdraw his guilty plea as to Counts 12 and 15.[12]   The Petitioner argued that he was not properly advised by his former counsel and did not understand what he was doing when he entered into the plea agreement and plead guilty. Also, Petitioner argued that his former counsel forced him to testify at the suppression hearing. The Court denied the Petitioner's motion and ordered the Petitioner stand for sentencing.[13]   The Petitioner was sentenced on March 17, 2004, and was sentenced to a term of 280 months as to each of Counts 12 and 15, to be served concurrently, a term of supervised release of five years

---

[7]      Rec. Doc. No. 103.

[8]      Rec. Doc. Nos. 140 and 147.

[9]      Rec. Doc. No. 165.

[10]      Rec. Doc. No. 178.

[11]      Rec. Doc. No. 196.

[12]      Rec. Doc. No. 201.

[13]      Rec. Doc. No. 203.

and a special assessment of $200.[14]

On March 26, 2004, the Petitioner appealed his conviction and sentence to the United States Court of Appeals for the Fifth Circuit.[15]  The Court of Appeals affirmed the Petitioner's conviction and sentence in a per curiam opinion on April 20, 2005.[16]  The Fifth Circuit held that, although the plea agreement contained a waiver-of-appeal provision, his appeal was not barred due to the fact that the Court did not specifically advise the Petitioner that he had waived his right to appeal his sentence.  *See* Rec. Doc. No. 250, at pp. 1-2.  The Fifth Circuit also held that, in light of the Supreme Court's decision in *Booker*, the Court committed plain error by computing the Petitioner's sentence based on judicially determined facts under a mandatory guidelines system.  *Id.* at p. 2.  However, the Fifth Circuit affirmed the Court's sentence stating that the Petitioner did "not demonstrate that the district court would have reached a different conclusion has it known that the Guidelines were advisory only, he has failed to demonstrate that the error affected his substantial rights."  *Id.*  The Petitioner then appealed to the United States Supreme Court, but his petition for a writ of certiorari was denied.[17]  Then, the Petitioner filed the present motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.

## II.    MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE

Petitioner advances several arguments in support of his motion; all of the Petitioner's claims are couched as claims of ineffective assistance of counsel.  First, the Petitioner alleges

---

[14]    Rec. Doc. No. 204.

[15]    Rec. Doc. No. 205.

[16]    Rec. Doc. No. 252.

[17]    Rec. Doc. No. 256.

that his counsel was ineffective for failing to assert defects in the indictment.  Petitioner argues that the two counts of the indictment to which he plead guilty contained several statutory charges in each count and, therefore, were duplicitous.  This deficiency, according to the Petitioner, stripped the Court of jurisdiction.  Petitioner also argues that his counsel was ineffective for failing to ensure that the Petitioner "had full knowledge of the potential results of pleading guilty to an indictment not motioned for dismissal by counsel."  Additionally, the Petitioner argues that his counsel was ineffective for not objecting to the fact that the Indictment was constructively amended to include a firearms charge due to the fact that he received a sentencing enhancement for his possession of firearms.

Second, the Petitioner alleges that his counsel was ineffective on several grounds relating to the Petitioner's motion to suppress.  Petitioner argues that his counsel was ineffective for failing to call witnesses or impeach witnesses during the suppression hearing.  The Petitioner argues that, while his counsel called three witnesses to testify during the suppression hearing, he "failed to have their statements 'notarized,' compelling the defendant to do so."  Further, the Petitioner argues that his counsel failed to properly investigate and prepare a defense by not calling witnesses who could have contradicted the government's witnesses.  Petitioner also argues that his appellate counsel was ineffective for failing to appeal the Court's decision on the Petitioner's motion to suppress.

Third, the Petitioner alleges that his counsel was ineffective with regards to determining whether the Petitioner was mentally competent.  The Petitioner argues that he received ineffective assistance of counsel due to the fact that his attorney did not question his competency prior to him pleading guilty.  Further, the Petitioner argues that he received ineffective assistance

of counsel when his attorney did not seek funds for an expert to contradict the psychiatric evaluation performed by Dr. Rennie Culver.

Fourth, Petitioner argues he received ineffective assistance of counsel due to the fact that his attorney failed to object to the firearm enhancement pursuant to the United States Sentencing Guidelines.

Finally, Petitioner argues that his guilty plea was involuntary and uninformed because his defense counsel induced him to plead guilty by promising, on the day Petitioner signed the plea agreement,  that he had worked out a "deal" with the government under which petitioner would receive a maximum of ten years.  Petitioner claims to have asked if the ten year deal was still in place at the guilty plea hearing, at which time he and his child's mother, Tammy Brown, were informed that he would get this deal.  Petitioner claims that he was asked to sign the plea agreement quickly, and was unable to read its contents before his defense counsel induced him to sign it, threatening that the government might take the favorable terms of the plea agreement away if petitioner did not sign quickly, and that he would therefore face a life sentence. Petitioner claims that his attorney lied to him about this non-existent deal because the attorney was unwilling and/or unable to go to trial and that had he known the agreement with the government for ten years of jail time did not exist, he would never have pled guilty.  Petitioner also alleges that his attorney subsequently supplied him with answers to this Court's Rule 11 guilty plea inquiries. He claims his attorney advised him to tell the judge that there were no promises and no deals or he would lose his ten year deal, and told him how to answer this Court's inquiries.

## III.    LAW & ANALYSIS

### A.    Timeliness of Petition

Pursuant to 28 U.S.C. § 2255, a petitioner may file a habeas corpus petition claiming that

a sentence imposed by a federal court "was imposed in violation of the Constitution or the laws

of the United States."  A petitioner has one year from

> (1) the date on which the judgment of conviction becomes final;
> (2)  the date on which the impediment to making a motion created
> by governmental action in violation of the Constitution or laws of
> the United States is removed, if the movant was prevented from
> making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by
> the Supreme Court, if that right has been newly recognized by the
> Supreme Court and made retroactively applicable to cases on
> collateral review; or
> (4) the date on which the facts supporting the claim or claims
> presented could have been discovered through the exercise of due
> diligence.

28 U.S.C. § 2255.  If a petitioner fails to file a Section 2255 petition within the applicable one-

year period, the Court must dismiss the petition as untimely unless "rare and exceptional

circumstances" warrant the equitable tolling of this period.  *Davis v. Johnson*, 158 F.3d 806, 811

(5th Cir. 1998).

The Petitioner's judgment of conviction became final when the United States Supreme

Court denied his petition for a writ of certiorari on October 3, 2005.  The Petitioner filed this

motion on September 8, 2006.  Therefore, the petition is timely.

### B.    Evidentiary Hearing

An evidentiary hearing is not required on a motion to set aside a sentence if it appears

conclusively from the record that the Petitioner is not entitled to relief.  *See Randle v. Scott*, 43

F.3d 221, 226 (5th Cir. 1995); *United States v. Plewniak*, 947 F.2d 1284, 1290 (5th Cir. 1991).

Based upon a review of the entire record, it is the opinion of the Court that the motion filed by

the Petitioner can be addressed without an evidentiary hearing.

### C.    Effect of a Defendant's Waiver in a Plea Agreement

In *United States v. Wilkes*, the United States Court of Appeals for the Fifth Circuit held

that "an informed and voluntary waiver of post-conviction relief is effective to bar such relief."

7

20 F.3d 651, 653 (5th Cir. 1994).  The Court will enforce a waiver of § 2255 rights if such waiver is based on a defendant's informed and voluntary decision.  *United States v. White*, 397 F.3d 336, 339 (5th Cir. 2002) (citing *Wilkes*, 20 F.3d at 653).  The Court, therefore, must determine whether Mr. Merrill entered into the waiver knowingly and voluntarily.

In his plea agreement, the Petitioner waived his right to collaterally attack his conviction or sentence, including his right to file a § 2255 motion.  The Court asked the Petitioner whether the plea agreement accurately conveyed the details on the plea agreement, including the waiver. The Petitioner signed the agreement and confirmed to the Court that he did in fact sign the plea agreement.  Additionally, the language in the plea agreement was clear and unambiguous. Indeed, the Petitioner previously moved the Court to withdraw his guilty plea arguing that his counsel failed to advise him of the consequences of pleading guilty.  The Court previously rejected these arguments and held that the Petitioner's plea was knowing and voluntary.[18]

However, as stated above, on direct appeal the Fifth Circuit held that, although the plea agreement contained a waiver-of-appeal provision, his appeal was not barred due to the fact that the Court did not specifically advise the Petitioner that he had waived his right to appeal his sentence.  *See* Rec. Doc. No. 250, at pp. 1-2.  Accordingly, the Court will address the merits of the Petitioner's arguments.

### D.    Petitioner's Claims

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues; (2) challenges to the district court's jurisdiction to impose the sentence; (3) challenges to the length of a sentence in excess of the statutory maximum; and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.

---

[18]      Rec. Doc. No. 203.

A petitioner "is barred from raising jurisdictional and constitutional claims for the first time on collateral review unless he demonstrates cause for failing to raise the issue on direct appeal and actual prejudice resulting from the error." *United States v. Patten*, 40 F.3d 774, 776 (5th Cir. 1994) (citing *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992)).  "No other types of errors may be raised on collateral review unless the movant demonstrates that the error could not have been raised on direct appeal, and if condoned, would result in a complete miscarriage of justice." *Id.*

The Petitioner couches most of his claims as claims of ineffective assistance of counsel. "To prevail on a claim of ineffective assistance of counsel without establishing a conflict, a movant must proceed under the traditional *Strickland* standard by showing (1) that his counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced his defense." *United States v. Culverhouse*, 507 F.3d 888, 895 (5th Cir. 2007).  "The proper standard for judging attorney performance is that of reasonably effective counsel, considering all the circumstances." *United States v. Dixon*, 2008 WL 89972, *3 (E.D. La. Jan. 7, 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  A defendant cannot attack a guilty plea based on ineffective assistance of counsel unless his counsel was not a reasonable competent attorney and the advice was not within the range of competence demanded of attorneys in criminal cases." *Id.*  Courts are to review counsel's actions with great deference and a strong presumption that counsel has exercised reasonable professional judgment. *Johnson v. United States*, 2007 WL 4591235, *5 (E.D. Tex. Dec. 28, 2007) (citing *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996)).

A petitioner has the burden of identifying those acts or omissions of counsel that were not the result of reasonable professional judgment. *Id.*  "General statements and conclusory

charges of ineffectiveness will not suffice." *Id.*

### 1.    Claims Raised on Direct Appeal

"It is well settled in this Circuit that issues raised and disposed of in a previous appeal

from an original judgment of conviction are not considered in § 2255 Motions." *United States v.*

*Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citing *United States v. Jones*, 614, F.2d 80, 82 (5th

Cir. 1980)); *see also United States v. Porter*, 2007 WL 4348953, *2 (E.D. La. Dec. 7, 2007)

("Claims that have been raised and considered on direct appeal may be dismissed without

reconsideration of the merits when rehashed again in a collateral attack unless immediate

disposal of the issue would be a disserve to the ends of justice.").

In his direct appeal, the Petitioner argued that the adjustments he received for being a

career offender and for possessing a firearm under the Sentencing Guidelines violated his

constitutional rights in light of the Supreme Court's decision in *Booker*.  As stated above, the

Fifth Circuit affirmed the Court's sentence stating that the Petitioner did "not demonstrate that

the district court would have reached a different conclusion has it known that the Guidelines

were advisory only, he has failed to demonstrate that the error affected his substantial rights."

*See* Rec. Doc. No. 250, at p. 2.   The Petitioner raised this issue on direct appeal and he is

procedurally barred from relitigating them on collateral review.

### 2.    Defective Indictment

The Petitioner argues that his counsel was ineffective for failing to object to the allegedly

defective indictment.  Specifically, the Petitioner argues that Counts 12 and 15 of the Indictment

contained multiple statutory charges in each of these counts and was therefore duplicative.  The

Petitioner argues that this defect is jurisdictional and can be raised at anytime and that, because

the Indictment was duplicative, the Petitioner was "set adrift in deciding whether to go to trial of

[sic] plead guilty."[19]

As an initial matter, the Petitioner's argument that defects in the Indictment are jurisdictional is misplaced. The Fifth Circuit has stated that to the extent that a "decision[ ] holds that 'a defective indictment deprives a court of jurisdiction,' they are overruled by [*United States v. Cotton*, 535 U.S. 625 (2002)]." *United States v. Longoria*. 298 F.3d 367, 372 (5th Cir. 2002) (en banc). Further, "defects in an indictment do not deprive a court of its power to adjudicate a case." *Id.*

Additionally, the Petitioner made no attempt to show cause for failing to raise this issue on direct appeal. Therefore, he is barred from raising the issue on collateral review. Assuming that Petitioner is not barred from raising this issue, the Petitioner's claim still fails.

The Petitioner plead guilty to Counts 12 and 15 of the Indictment. Count 12 reads:

> On or about August 29, 2002, in the Eastern District of Louisiana, the defendant, RONNIE MERRILL, a/k/a Mannie, a/k/a Manny, did knowingly and intentionally distribute five (5) grams or more but less than fifty (50) grams of cocaine base ("crack"), a Schedule II narcotic drug controlled substance, and less than 100 grams of heroin, a Schedule I drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B) and 841(b)(1)(C).

Count 15 reads:

> On or about September 11, 2002, in the Eastern District of Louisiana, the defendant, RONNIE MERRILL, a/k/a Mannie, a/k/a Manny, did knowingly and intentionally possess with the intent to distribute one (1) kilogram or more of heroin, a Schedule I drug controlled substance, and less than five (5) grams of cocaine base ("crack"), a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 841(b)(1)(C).

Petitioner appears to argue that because each of Counts 12 and 15 included allegations that on or

---

[19]     Pl. Memo. in Support, p. 9, Rec. Doc. No. 275.

about a specific date, the Petitioner distributed and possessed with the intent to distribute multiple controlled substances, the Indictment was duplicitous.  The Court does not find the Petitioner's argument persuasive.

"An indictment may be duplicitous if it joins in a single count two or more distinct offense."  *United States v. Baytank (Houston), Inc.*, 934 F.2d 599, 608 (5th Cir. 1991) (citing *United States v. Robin*, 693 F.2d 376, 378 (5th Cir. 1982)). "The ban against duplicitous indictments derives from four concerns: prejudicial evidentiary rulings at trial; the lack of adequate notice of the nature of the charges against the defendant; prejudice in obtaining appellate review and prevention of double jeopardy; and risk of a jury's nonunanimous verdict." *United States v. Lucas*, 2006 WL 3062490, *1 (S.D. Miss. Oct. 26, 2006) (quoting *United States v. Cooper*, 966 F.2d 936, 939 n3 (5th Cir. 1992)).

Title 21, United States Code Section 841 makes it a crime for anyone to "knowingly or intentionally manufacture, distribute, or dispense, or possess with the intent to manufacture, distribute, or dispense a controlled substance."  21 U.S.C. § 841(a)(1).  Subsection (b) provides the sentences an individual shall receive for a violation of § 841(a).  In Count 12, the Petitioner was charged with the distribution of both heroin and crack cocaine.  As stated in the Factual Basis, which was signed by the Petitioner, the Petitioner sold 0.92 grams of heroin and five (5) grams of crack cocaine to a confidential source for $500 in a single transaction.  In Count 15, the Petitioner was charged with possessing with the intent to distribute heroin and crack.  As stated in the Factual Basis, after a search by the FBI of a residence where the Petitioner was located, the FBI seized 1031.42 net grams of heroin and 7.3 net grams of crack cocaine.

"The mere existence ... of multiple theories of liability or multiple factual predicates for violation of a statute does not render the indictment duplicitous."  *United States v. Washington*,

127 F.3d 510, 513 (6th Cir. 1997).  Both counts 12 and 15 of the Indictment charge only one offense: the distribution of controlled substances and the possession with the intent to distribute controlled substances.  Further, in light of the Supreme Court's decision in *Apprendi*, the Fifth Circuit has held that "if the government seeks enhanced penalties based on the amount of drugs under 21 U.S.C. § 841(b)(1)(A) or (B), the quantity must be stated in the indictment and submitted to a jury for a finding of proof beyond a reasonable doubt."  *United States v. Doggett*, 230 F.3d 160, 164-65 (5th Cir. 2000).  That is precisely the situation here: the government charged the Petitioner with two violations of 21 U.S.C. § 841(a)(1), one that occurred on August 29, 2002 and another that occurred on September 11, 2003.  In order to seek enhanced penalties under subsection (b), the government was required to state explicitly the controlled substance and the quantity in the indictment.  The Court finds that the Indictment was not duplicitous.[20]

However, the Fifth Circuit has held that in enacting 28 U.S.C. § 841(a), Congress intended "to provide trial judges with maximum flexibility in sentencing, and therefore intended to permit separate punishment for possession of each controlled substance.  Simultaneous possession of marijuana and of quaaludes constitutes two acts which violate one statute, and consecutive sentencing is appropriate."  *United States v. Davis*, 656 F.2d 153, 160 (5th Cir. 1981).[21]  The Court, however, cannot find any case that *requires* that an indictment that charges a

---

[20]    In an unreported decision by the Fifth Circuit, a criminal defendant raised the same argument that the Petitioner does here: that the indictment was defective because he was charged with possession of crack cocaine and cocaine in a single count.  *United States v. Burton*, 268 F.3d 1064, 2001 WL 877654, *1 (5th Cir. July 23, 2001) (Table).  The Fifth Circuit did not find that the defendant's indictment was duplicitous, however the Fifth Circuit did not address this specific aspect of the defendant's argument.  *See id.*  This opinion was unpublished and pursuant to Fifth Circuit Rule 47.5.4, is not precedent.  The Court does not rely on *Burton* as controlling precedent.

[21]    In addition to the Fifth Circuit, the First, Second, Fourth, and Sixth Circuits have also held that the simultaneous possession of two distinct controlled substances with intent to distribute can be two offenses and result in consecutive sentences.  *See United States v. Johnson*,

violation of 21 U.S.C. § 841(a)(1) for the simultaneous possession of different controlled substances charge the defendant in multiple counts.  Indeed, at least one court has called into question the validity of this holding in light of the enactment of the United States Sentencing Guidelines.  *See United States v. Johnson*,. 25 F.3d 1335, 1336 (6th Cir.), *overruled on other grounds*, 529 U.S. 53 (2000).[22]  The Court does not believe that an indictment must contain multiple counts for the simultaneous possession of multiple controlled substances.

Assuming that the Indictment was duplicitous in that it charged multiple offenses in a single count, the Petitioner must have been prejudiced in order to obtain any relief.  *United States v. Prejean*, 429 F. Supp. 2d 782, 798 (E.D. La. 2006) (citing *Baytank (Houston)*, 934 F.2d at 608). The Fifth Circuit has also stated that "[n]otwithstanding that a defendant's actions, charged in a single count, may be used where those actions 'represent a single, continuing scheme,' providing that the indictment (1) notifies the defendant adequately of the charges against him; (2) does not subject the defendant to double jeopardy; (3) does not permit prejudicial evidentiary rulings at trial; and (4) does not allow the defendant to be convicted by a non-unanimous jury."  *Baytank (Houston)*, 934 F.2d at 609.  The Petitioner does not argue he

---

25 F.3d 1335, 1336 (6th Cir.) *overruled on other grounds* 529 U.S. 53 (2000) (collecting cases).

> [22]   The Sixth Circuit stated that
> [i]nasmuch as the Sentencing Guidelines now provide for grouping or combining of controlled substances for purposes of sentencing, *see generally* U.S.S.G. § 2D1.1, and because offenses under 21 U.S.C. § 841 carry high maximum  penalties, the  simultaneous possession of controlled substances almost always results in concurrent sentences ... *even where* the controlled substances are charged in separate counts of the indictment.

*Johnson*, 25 F.3d at 1336.  The Sixth Circuit went on to state that because most of the opinions issued by the various circuits on this issue were decided before the enactment of the Sentencing Guidelines there was an issue of whether the relevant precedent should be overruled.  *Id.* at 1336-37.  However, because the defendant did not challenge the indictment in the district court, the court declined to address the issue.  *Id.* at 1337.

was prejudiced on any of the last three grounds, but he does argue that the Indictment "set [the Petitioner] adrift in deciding whether to go to trial of [sic] plead guilty."

The Court finds that, if it is duplicitous, the Indictment nevertheless meets the test for permissible duplicity.  Both Counts 12 and 15 make clear that the Petitioner was charged with two violations of 21 U.S.C. § 841(a)(1), and it also clear that with respect to Count 12 the Petitioner faced a maximum statutory sentence of 40 years imprisonment and with respect to Count 15 the Petitioner faced a maximum statutory sentence of life imprisonment.  Also, during his plea colloquy, the Petitioner was told the statutory maximums for each count that he was pleading guilty to, and was asked whether he understood the total maximum sentence.  The Petitioner stated that he did.  Then the Court asked whether the Petitioner understood that the Court could impose the maximum possible sentence as to each Count.  The Petitioner responded that he understood.  The Court finds that, even if the Indictment was duplicitous, the Petitioner was not prejudiced.

Because the Court finds that the Petitioner's arguments regarding the duplicity of the Indictment without merit, his counsel was not ineffective for failing to raise the issue.

### 3.    Constructive Amendment

The Petitioner also argues that the Indictment was constructively amended due to the fact that he received a sentencing enhancement for his possession of firearms.  Further, the Petitioner alleges that his counsel was ineffective "in failing to guide the defendant during the critical stages before any plea negotiations ... for he didn't assure Merrill had full knowledge of the potential results of pleading guilty to an indictment not motions for dismissal ... or the consequences of being sentenced for firearms not mentioned therein."

Typically, only a grand jury may amend an indictment.  *United States v. Gonzales*, 436

15

F.3d 560, 576 (5th Cir. 2006).  "An indictment is constructively amended if the jury is allowed

to convict a defendant upon a factual basis that modifies an essential element of the crime

charged."  *United States v. Baptiste*, 2007 WL 925894, *5 (E.D La. March 26, 2007).

As with his argument that the Indictment was duplicitous, the Petitioner made no attempt

to show cause for failing to raise this issue on direct appeal.  Therefore, he is barred from raising

the issue on collateral review.  Assuming that Petitioner is not barred from raising this issue, to

the extent that the Petitioner is attacking the Indictment itself, his claim still fails.

The Petitioner received a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1)

because, at the time of his arrest, firearms were found in the residence.  P.S.R., ¶ 35.  Indeed,

during the suppression hearing, the Petitioner admitted to possessing a firearm when he opened

the door when the FBI arrived at 4703 ½ Baudin Street to execute an arrest warrant for the

Petitioner.  The factual basis, which the Petitioner signed, also states that firearms were located

in the residence at the time the Petitioner was arrested.

In *United States v. Baker*, the Fifth Circuit addressed on direct appeal a substantially

similar argument.  883 F.2d 13 (5th Cir. 1989).  The defendant in *Baker* plead guilty to two

counts of manufacturing methamphetamine and conspiracy to manufacture and possess with

intent to distribute methamphetamine in exchange for the dismissal of one count of use of a

firearm during the commission of a felony.  *Id.* at 14.  The defendant received an enhancement

for possessing a firearm pursuant to U.S.S.G. §2D1.1(b).  *Id.* at 15-16.  The Fifth Circuit

affirmed the enhancement stating that "[v]isible possession of a firearm may be treated as a

sentencing consideration rather than an element of a particular offense."  *Id.* at 16 (citing

*McMillian v. Pennsylvania*, 477 U.S. 79, 91 (1986)).  As a result, "[t]he indictment ... was not

required to incorporate this sentencing provision."  *Id.* (citing *Buckley v. Butler*, 825 F.2d 895,

903 (5th Cir. 1987)).

The Petitioner argues that his counsel was ineffective for failing object to the fact that the Indictment did not charge the Petitioner with possessing a firearm.  Again, Petitioner's argument fails.  The Petitioner was sentenced by the Court pre-*Booker*, and at the time the Petitioner was indicted, plead guilty and was sentenced, the Fifth Circuit clearly stated that it was unnecessary for a firearms enhancement to be included in an indictment.  Accordingly, the Petitioner cannot satisfy the first prong of *Strickland*.

### 4.   Counsel's Performance at Suppression Hearing

The Petitioner also argues that his counsel was ineffective during the suppression hearing.  Specifically, Petitioner argues that although his attorney called three witnesses to testify, he "failed to have their statements 'notarized,' compelling the defendant to do so."  The Petitioner also argues that his attorney failed to call several witnesses who were available to testify as to whether Ms. Tammy Brown was a resident or visitor at the apartment where the Petitioner was arrested.  This, according to the Petitioner, shows that his attorney "failed to properly investigate and prepare a defense in a critical stage of the defendant's case."

A review of the transcripts from the suppression hearing show that the Petitioner's counsel was not ineffective.  Petitioner's counsel called seven witnesses during the hearing and vigorously cross-examined the government's witnesses.  Additionally, there is nothing in the record to indicate that the result of the hearing would have been different had Mr. Wainwright "notarized" the witnesses' statements or called additional witnesses to testify regarding whether Ms. Brown was a resident or visitor of the of the apartment.[23]  With respect to whether Ms. Brown was a resident or visitor of the apartment, the Court never ruled on this issue.  Rather, the

---

[23]   The Court is unsure of what the Petitioner means when he argues that his counsel failed to "notarize" the witnesses' statements.

Court ruled that "the officers had a *reasonable belief* that Tammy Brown had access or control of the property and could consent to a warrantless search."  *See* Order & Reasons, Rec. Doc. No. 86, p. 15 (emphasis added).  It would have made no difference had the Petitioner's counsel called additional witnesses to testify as to Ms. Brown's status with respect to the apartment in question. The Petitioner cannot establish that his counsel was ineffective at the suppression hearing.

### 5.   Appellate Counsel Failed to Challenge Court's Ruling at the Suppression Hearing

The Petitioner also argues that his appellate counsel was ineffective for failing to challenge the Court's ruling on his motion to suppress on appeal.  Specifically, the Petitioner alleges that he urged his appellate counsel on multiple occasions to challenge the Court's alleged reliance on the false testimony from the arresting officers, yet, despite his urging, his appellate counsel did not raise the argument.  Allegedly, Petitioner's appellate counsel explained his reason for not raising this issue on appeal in a letter to the Petitioner.[24]

Courts are to review counsel's actions with great deference and a strong presumption that counsel has exercised reasonable professional judgment.  *Johnson*, 2007 WL 4591235 at *5. With respect to appellate counsel, "effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available."  *Green v. Johnson*, 160 f.3d 1029, 1043 (5th Cir. 1998).  Rather, "[a]ppellate counsel is obligated to only raise and brief those issues that are believed to have the best chance of success." *Rose v. Johnson*, 141 F. Supp.2d 661, 704-705 (S.D. Tex.2001). "It is not only reasonable but effective for counsel on appeal to winnow out weaker arguments and focus on a few key issues." *Mayo v. Lynaugh*, 882 F.2d 134, 139 (5th Cir.1989), *modified on other grounds*, 893 F.2d 683 (5th Cir.1990), *cert. denied*, 502

---

[24]     The Petitioner states in his memo he has attached this letter as an exhibit, however a copy was not provided to the Court.

U.S. 898, 112 S. Ct. 272, 116 L. Ed.2d 225 (1991). "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1985) (cited with approval in *Smith v. Robbins*, 528 U.S. 259, 288, 120 S. Ct. 746, 145 L. Ed.2d 756 (2000)).

With respect to the prejudice requirement, "[p]rejudice results if the attorney's deficient performance would likely render either the defendant's trial fundamentally unfair or the conviction and sentence unreliable." *United States v. Dovalina*, 262 F.3d 472, 474 (5th Cir.2001). "When the claim of ineffective assistance of appellate counsel is based on counsel's failure to raise a claim or issue on appeal, prejudice is established if it is shown 'that the appeal would have had, with reasonable probability, a different outcome if the attorney adequately addressed the issue' and 'that the attorney's deficient performance led to a fundamentally unfair and unreliable result.'" *United States v. Valencia-Quintana*, 2007 WL 922228, *3 (S.D. Tex. Mar. 22, 2007) (quoting *Dovalina,* 262 F.3d at 474-75).

As an initial matter, a defendant's claims regarding an illegal search and seizure are waived when he enters a plea of guilty unless he can show that his plea was involuntary. *Phelps v. United States*, 2007 WL 2109244, *10 (E.D. Tenn. July 18, 2007) (citing *Tollett v. Henderson*, 411 U.S. 258, 266-67, 93 S. Ct. 1602 (1973); *Franklin v. United States*, 589 F.2d 192, 194-95 (5th Cir. 1979)). The Petitioner plead guilty, and, as discussed below, his plea was voluntary. Accordingly, he waived his claims regarding the alleged illegal search and appellate counsel was not ineffective for raising the issue on direct appeal.

Further, assuming appellate counsel could raise the argument regarding the alleged illegal search and seizure on appeal, the Petitioner still cannot prevail. The Petitioner states in his motion that his appellate counsel did not appeal the Court's ruling on the motion to suppress

because he felt it would be unsuccessful.  *See*, Pet. Memo., p. 29.  As stated above, it was not only reasonable but effective for the Petitioner's appellate counsel to not raise this issue and focus on other issues that he believed would be successful, namely the effect of *Booker* on the sentencing adjustments the Petitioner received under the Sentencing Guidelines.  The Court finds that the Petitioner's appellate counsel was not ineffective for not raising issues with respect to the suppression hearing on appeal.

> **6.     The Court's Ruling on Petitioner's Motion to Suppress**

To the extent that the Petitioner seeks to directly challenge the Court's ruling on his motion to suppress, he has failed to demonstrate cause for failing to raise the issue on direct appeal and actual prejudice resulting from the error.  *See*, *Patten*, 40 F.3d at 776.  Therefore, he is barred from raising the issue on collateral review.

Assuming that the Petitioner was able to challenge the Court's ruling on collateral review, any argument raised by the Petitioner is without merit.

After a review of the parties' pleadings, the transcript and the law, the Court finds that its initial ruling was correct.  Based on the facts and circumstances, it was imminently reasonable for the officers to believe that Tammy Brown had access or control of the property and could consent to a warrantless search.   Additionally, the Court found that Tammy Brown admitted under oath that her signature appeared on the consent to search form.

> **7.     Counsel's Failure to Question Petitioner's Competency Prior to Guilty Plea**

Petitioner further argues that his counsel was ineffective for failing to question his competency prior to his guilty plea.  "A defendant is mentally competent to stand trial if he has sufficient present ability to consult with his lawyers with a reasonable degree of rational understanding and if he has rational as well as factual understanding of the proceedings against

him." *Franklin v. United States*, 589 F.2d 192, 195-95 (5th Cir. 1979) (citations omitted).

Further, when the record indicates that the defendant is alert and coherent, counsel is not

ineffective for not questioning his client's competency. *See U.S. ex rel. Rivera v. Franzen*, 794

F.2d 314, 317 (7th Cir. 1986) (citing *Saunders v. Eyman*, 600 F.2d 728, 731 (9th Cir. 1977))

("While one would hope that defense lawyers would routinely reflect upon the mental

capabilities of a defendant, in the absence of circumstances that would put a counsel on notice

the Constitution cannot be read to mandate a specific inquiry at all times.").

The Court observed the Petitioner on many occasions and believed him to be alert and

coherent.  During the suppression hearing, the Petitioner testified as to the events of the day of

his arrest.  The Court also observed the Petitioner during his plea colloquy and found at that time

that there were no issues regarding the Petitioner's competency to plea. *See* Transcript of

Rearraignment, p.5.  Further, as the Court stated in its Order and Reasons, dated March 10, 2004,

the Court had no question regarding the Petitioner's competency's to plea guilty, but "out of an

abundance of caution, the Court ordered a competency hearing to determine whether or not the

Defendant was competent to stand for sentencing."[25]  After an examination, a psychiatrist found

the Petitioner was competent and was able to confer with counsel and understand the

proceedings. As a result, the record does not support the Petitioner's claim of incompetency and

therefore, his counsel was not ineffective.

### 8.   Counsel Failed to Motion Court for Funds to Challenge the Findings of the Court's Psychiatrist

The Petitioner argues the counsel's failure to utilize 18 U.S.C. §3006A to obtain funds

for an expert to challenge the psychiatric evaluation that found the Petitioner competent

amounted to ineffective assistance of counsel.  Under *Strickland*, "counsel has a duty to make

---

[25]     Rec. Doc. No. 203, p. 5.

reasonable investigations or to make a reasonable decisions that makes particular investigations unnecessary." *Parker v. Turpin*, 60 F. Supp. 2d 1332, 1345 (N.D. Ga. 1999).  After a request, the Petitioner was sent to Dr. Rennie Culver for an independent psychiatric evaluation of his competency.  Dr. Culver found the Petitioner competent.

Assuming counsel's decision not to request another evaluation was unreasonable, the Petitioner has not shown that he was prejudiced.  The Petitioner does not provide any evidence that another expert would have concluded differently, therefore no prejudice has been shown.  *See Gonzalez v. Knowles*, 515 F.3d 1006, 1015-16 (9th Cir. 2008); *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) (speculation about what an expert would have said is not enough to establish prejudice to defendant).

### 9.      Counsel Failed to Object to Firearms Enhancement During Sentencing

The Petitioner argues that his counsel was ineffective at sentencing for failing to object to the firearm enhancement he received so that the issue would be "ripe for appellate review."  The Petitioner, as discussed above, challenged the firearm enhancement as violating his constitutional rights following *Booker* with the Fifth Circuit.  To the extent that the Petitioner seeks to revisit that issue here, he is barred from doing so.  *Kalish*, 780 F.2d at 508.

Addressing whether his counsel was ineffective for failing to object to the firearm enhancement, the Petitioner's argument still fails.  The Presentence Investigation Report states that the Petitioner received a two-level enhancement to his offense level pursuant to U.S.S.G. § 2D1.1(b)(1) because of the fact that firearms were found in the Petitioner's residence at the time of arrest.  This section of the Sentencing Guidelines provides that if "a dangerous weapon (including a firearm) was possessed," then the base offense level is to be increased by 2 points.  U.S.S.G. § 2D1.1(b)(1) (2002).  Application Note 2 provides that "[t]his adjustment should be

applied if the weapon was present, unless it is clearly improbable that the weapon was connected

with the offense." *Id.* The Fifth Circuit has stated that the firearm enhancement is appropriate

when "the government proves by a preponderance of the evidence that a temporal and spatial

relationship existed between the weapon, the drug trafficking activity, and the defendant."

*United States v. Caicedo*, 103 F.3d 410, 412 (5th Cir. 1997). "The government must provide

evidence that the weapon was found in the same location where drugs or drug paraphernalia are

stored or where part of the transaction occurred." *Id.*

      Here, the Petitioner, as he testified during the suppression hearing, was holding a

handgun when he opened the door to the apartment in response to the FBI's knocking.[26]

Additionally, the factual basis signed by the Petitioner states that the FBI while performing a

protective sweep located a firearm.[27] Further, at the time he was arrested, the FBI witnessed an

individual throw bags of what later was shown to be heroin from the window of the apartment

---

[26]    The Petitioner stated on several occasions that he possessed a firearm at the time
of his arrest:

> Q: What did you first do when you woke up having just been
> informed what you said Tammy told you?
> A: I woke up. I grabbed a gun and ran down the steps.

Transcript, p. 120, lines 16 - 18.

> Q: When you went back down a second time and were listening to
> see, did you have a gun in your possession at that moment when
> you were down there just before you opened the door?
> A: Yes.
> Q: You had a gun in your hand?
> A: Yeah.
> Q: When you opened the door and saw it was the police, what did
> you do with the gun?
> A: Dropped it. I dropped it.

Transcript, p. 123, lines 9 - 18.

[27]  Rec. Doc. No. 103, p. 2.

where the Petitioner was arrested.  The application of the firearm enhancement was proper in this case.

Because the Court finds that the application of the firearm enhancement was proper, the Petitioner's counsel cannot be ineffective for failing to object to such enhancement.  *See, Jefferson v. United States*, 2007 WL 1170630, *4 (N.D. W. Va. March 28, 2007).

### 10.    Counsel's Alleged Inducement of Petitioner to Plea

The most serious of all of the Petitioner's allegations is that his attorney, Gary Wainwright, induced him to plead guilty by promising on the day Petitioner signed the plea agreement that Mr. Wainwright had worked out a "deal" with the government.  As a result, the Petitioner claims that his guilty plea was involuntary and uninformed. Pursuant to this alleged deal, the Petitioner would be sentenced to a maximum of ten years imprisonment;  he was sentenced to twenty-three years and four months imprisonment and five years of supervised release.

The Petitioner further alleges that Mr. Wainwright lied to him that this alleged deal existed because Mr. Wainwright was unwilling to go to trial.   The Petitioner raises several specific examples of how Mr. Wainwright was ineffective:  by lying to him about the alleged "deal"; by forcing him to sign the plea agreement before the Petitioner had a chance to read its contents; by instructing the Petitioner to tell the Court that there were no promises or deals despite the existence of this alleged deal for 10 years imprisonment; and by failing to have the deal memorialized in the plea agreement pursuant to Federal Rule of Criminal Procedure 11(e)(1)(C).

Due to the importance of the voluntariness of plea agreements between the accused (as assisted by counsel) and the prosecutor, "when a defendant pleads guilty on the basis of a

24

promise by his defense attorney or by the prosecutor, whether or not such promise is fulfillable, breach of that promise taint the voluntariness of his plea." *Montoya v. Johnson*, 226 F.3d 399, 405 (5th Cir. 2000) (quoting *McKenzie v. Wainwright*, 632 F.2d 649, 651 (5th Cir. 1980)).  "A conviction based upon such a plea is open to collateral attack."  *United States v. Cates* , 952 F.2d 149, 152 (5th Cir. 1992).

However, a habeas petitioner must present "more than uncorroborated assertions of a broken plea agreement" in order to be entitled to an evidentiary hearing on the voluntariness of his plea. *United States v. McCord*, 618 F.2d 389, 393 (5th Cir. 1980).  Normally, a defendant who has testified at a plea hearing to the voluntariness of his or her guilty plea will not be allowed to refute such testimony given under oath: "Solemn declarations in open court carry a strong presumption of verity, forming a formidable barrier in any subsequent collateral proceedings."  *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977)) (internal quotation marks omitted).

In order to overcome that barrier, where a petitioner's claims of inducement are refuted by his or her testimony at the plea hearing, a petitioner must prove:  (1) the exact terms of the alleged promise; (2) exactly when, where, and by whom the promise was made; and (3) the precise identity of an eyewitness to the promise. *Cervantes*, 132 F.3d at 1110 (citing *Harmonson v. Smith,* 888 F.2d 1527, 1529 (5th Cir. 1989)); *see also United States v. Napoles*, 2007 WL 2818007, *12 (S.D. Tex. Sept. 26, 2007); *United States v. Cruz*, 2007 WL 1566645, *5 (S.D. Tex. May 29, 2007); *Saucier v. United States*, 2006 WL 181395, *3 (S.D. Miss. Jan. 19, 2006). A petitioner will only be entitled to an evidentiary hearing on the issue of voluntariness of a guilty plea if he or she offers independent indicia of the likely merit of a defendant's allegations of these three elements, generally consisting of affidavits from reliable third parties. *Cervantes*,

132 F.3d at 1110 (citing *United States v. Smith,* 844 F.2d 203, 208 (5th Cir. 1988)); *see also*

*Napoles*, 2007 WL 2818007 at \*12.  *See generally, United States v. Edwards*, 442 F.3d 258, 264

(5th Cir. 2006) (same).  "[M]ere contradiction of [petitioners'] statements at the guilty plea

hearing will not carry his burden." *United States v. Raetzsch* 781 F.2d 1149 (5th Cir. 1986).

Here, the Petitioner fails to provide any independent indicia of the merit of his

allegations.  The Petitioner argues that his girlfriend, Ms. Tammy Brown, was informed by Mr.

Wainwright that the Petitioner would receive a maximum sentence of ten years if he plead guilty.

However, the Petitioner fails to provide the necessary specificity with respect to these claims.

The Petitioner does not allege that Ms. Brown was an eyewitness to the alleged promise, rather

she was informed afterwards.  Although the Petitioner refers to several affidavits in his motion,

he has not provided any to the Court.

Also, during his plea colloquy, the Petitioner was told what the statutory maximums were

for each count that he was pleading guilty to, and was asked whether he understood the total

maximum sentence.  The Petitioner stated that he did.  Then the Court asked whether the

Petitioner understood that the Court could impose the maximum possible sentence as to each

Count.  The Petitioner responded that he understood.  Further, the Court asked the Petitioner

whether he knew that plea agreements were permissible and that all counsel had a duty to

disclose the existence and terms of any such agreement and the Court asked whether the

Petitioner understood that any agreement he may have with the United States' Attorney would

not limit the Court and that the Court could impose the maximum sentence.  Again, the

Petitioner responded that he understood.

Accordingly, the Court finds that the Petitioner has failed to meet his burden to be

entitled to an evidentiary hearing and that he is unable to show that he was induced to plea.

###### 11.    Petitioner's Attack on His State Convictions

Finally, the Petitioner argues that he plans to attack his two previous state convictions for simple robbery as unconstitutional under *Boykin v. Alabama*.  Because of these convictions, the Petitioner received a career offender enhancement under U.S.S.G. §4B1.1.  If the Petitioner is successful, he argues that he may re-open his federal sentence pursuant to *United States v. Nichols*, 30 F.3d 35 (5th Cir. 1996).

In *Custis v. United States*, the United States Supreme Court stated, in dicta, that a defendant who was successful in attacking his state court conviction in state court may then apply to re-open a federal sentence enhanced by those state sentences.  511 U.S. 485 (1994). The Fifth Circuit has held that *Custis* does allow a petitioner to re-open a federal sentence enhanced by a state conviction after such state conviction is invalidated.  *Cf. United States v. Nelson*, 1999 WL 621533, *3 (E.D. La. Aug. 12, 1999).  These cases, however, allow for a petitioner's federal sentence to be re-opened only *after* he is successful in invalidating his state convictions.  It appears, however, that the Petitioner has either not yet challenged or has not been successful in challenging his state conviction.  Accordingly, the Petitioner cannot prevail on this claim.

The Petitioner admits as much and asks the Court to either hold in *Custis* claim in abeyance or deny his *Custis* claim as premature without petitioner's right to file a §2255 motion when such claims are ripe.  Under Rule 9 of the Rules Governing Section 2255 Proceedings for the United States District Court, if the Petitioner wishes to file a second motion for relief if the state court invalidated his previous convictions, he may, but he must obtain an order from the Fifth Circuit before the district court may consider it.  The Fifth Circuit has reiterated recently that § 2255 relief is appropriate where a state conviction that formed the basis of a career

offender designation is invalidated after federal sentencing. *United States v. Santana*, 220 Fed.

Appx. 283 (5th Cir. 2007).   The Petitioner is not barred from filing a successive motion if his

state court convictions are overturned.

## III.    CONCLUSION

Accordingly, IT IS ORDERED that the Petitioner's motion is DENIED.


New Orleans, Louisiana, this 4th day of June, 2008.


_____
UNITED STATES DISTRICT JUDGE