UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL ACTION |
| versus | * | NO. 02-277 |
| RONNIE MERRILL | * | SECTION "L" |

## ORDER & REASONS

Pending before the Court is Defendant Ronnie Merrill's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A), R. Doc. 367. The Government opposes the motion. R. Doc. 373. Having considered the applicable law and the parties' arguments, the Court now rules as follows.

## I.   BACKGROUND

On March 26, 2003, Defendant Ronnie Merrill appeared before the Court and pleaded guilty to Counts 12 and 15 of an indictment charging him with knowingly and intentionally distributing, and possessing with the intent to distribute, quantities of cocaine base and heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 841(b)(1)(C). On February 18, 2004, Merrill filed a motion to withdraw his guilty plea, R. Doc. 201, but the motion was denied on March 10, 2004. R. Doc. 203. On March 17, 2004, Merrill was sentenced to 280 months in the custody of the Bureau of Prisons as to each count, with all terms to be served concurrently. R. Doc. 204. Merrill was also sentenced to a five-year term of supervised release upon his release from custody and ordered to pay a $200 special assessment fee. R. Doc. 204.

## II.   PENDING MOTION

On March 29, 2019, Merrill filed a motion seeking a retroactive sentence reduction under

1

Section 404 of the First Step Act. R. Doc. 349. While that motion was pending, Merrill filed the instant motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) in light of the ongoing global outbreak of COVID-19. R. Doc. 367. In his motion, Merrill argues he has recently suffered a life-threatening lung collapse and been diagnosed with a number of pulmonary-related conditions in addition to hypertension and chronic kidney disease, which place him at a high risk of contracting and suffering severe complications from the virus. *Id.* at 7. He further argues that his facility, Forth Worth FMC, is incapable of containing the outbreak such that he has been consistently denied adequate medical while incarcerated there. Merrill also argues that he has been successfully rehabilitated during his almost eighteen in prison, and that he has not had a disciplinary infraction in over eight years. *Id.* at 12. Lastly, Merrill notes that he poses no danger to society if released, as his offenses of conviction involve non-violent drug crimes, and that his release is supported by the §3553(a) factors. *Id.* at 32. Merrill also notes that he has exhausted his administrative remedies. *Id.* at 11.

The government concedes that Merrill has exhausted his administrative remedies and that his medical conditions constitute extraordinary and compelling reasons warranting a sentence reduction. R. Doc. 373 at 11. However, the government opposes the motion on the grounds that the § 3553(a) factors continue to warrant the period of incarceration imposed and that Merrill remains a significant danger to the safety of the community. *Id.* at 13. In support, the government cites the "well-established" public danger posed by "drug offenders writ large," and details Merrill's criminal history, which involve multiple drug-related charges and two simple robbery convictions. *Id.* at 14. The government also argues that releasing Merrill in advance of his January 23, 2023 scheduled release date would "undermine the need for the sentence imposed." *Id.* at 15. Lastly, the government notes that Merrill has not offered concrete plans for his release beyond indicating that

2

he would live in New Orleans or Slidell with family members and suggests that he would be safer from COVID-19 if he remained incarcerated because the death rate in Orleans and Saint Tammany Parishes exceeds the death rate at Forth Worth FMC. *Id.* at 16.

## III. LAW

Although a court is generally prohibited from modifying an already-imposed term of imprisonment, 18 U.S.C. § 3582(c) allows a court to reduce a sentence if, after considering the applicable § 3553 factors, "extraordinary and compelling reasons exist" and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The statute also imposes certain procedural requirements. Specifically, § 3582(c)(1)(A) allows an inmate to seek compassionate release from the district court provided he has first filed an internal request to the warden of his facility for a sentence reduction and either (1) "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons" to act on his behalf; or (2) waited thirty days from the warden's receipt of such a request. *Id.*

In sum, courts routinely consider three requirements when determining whether compassionate release is appropriate: (1) whether the defendant has exhausted administrative remedies; (2) whether extraordinary and compelling reasons exist; and (3) whether defendant poses a danger to the safety of any other person or society. The defendant bears the burden of demonstrating that these elements are satisfied. *United States v. Davis*, No. CR 07-357, 2020 WL 2838588, at *2 (E.D. La. June 1, 2020). The Court considers each in turn.

First, the Court must be satisfied that Merrill has complied with the statute's procedural requirements. Merrill's motion and the attachments to it reflect that his attorney submitted a request for compassionate release on his behalf to the Warden of Fort Worth FMC on June 10, 2020, upon learning of Merrill's pulmonary emergency. R. Doc. 367-1 at 12. This motion was

denied on June 20, 2020, and Merrill appealed on July 5, 2020 on the grounds that the denial did not address any of his specific underlying conditions. *Id.* The appeal was denied on July 20, 2020, and Merrill accordingly filed the instant motion. *Id.* The government does not dispute this account and in fact concedes that "Merrill appears to have satisfied the exhaustion requirement and this Court may consider his motion." R. Doc. 373 at 11. The Court is satisfied that Merrill has fully exhausted all administrative rights to appeal the BOP's failure to seek compassionate release on his behalf, and accordingly may consider the merits of his motion.

Second, the Court must consider whether extraordinary and compelling circumstances exist to warrant compassionate release. Although the statute does not define "extraordinary and compelling circumstances," the United States Sentencing Commission's Policy Statement explains that such circumstances may exist based on the defendant's medical condition, age, or family circumstances. U.S.S.G. 1B1.13. Specifically, a medical condition may constitute an extraordinary or compelling reason if the defendant suffers from a "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* Recognizing that certain chronic conditions may heighten the risk of contracting and suffering severe complications from COVID-19, courts typically require an inmate seeking compassionate release based on the virus to demonstrate "a particularized susceptibility to the disease" and "a particularized risk of contracting the disease at his prison facility." *James*, 2020 WL 3567835 (quoting *United States v. Feiling*, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (collecting cases)). "General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.23." *United States*

4

*v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (quoting *United States v. Eberhart*, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)). Indeed, if general concerns about COVID-19 constituted extraordinary and compelling reasons, all incarcerated individuals would qualify for compassionate release.

Merrill has successfully demonstrated, through competent evidence, that he suffers from a number of chronic conditions that increase his chances of contracting and severely suffering from COVID-19. Merrill indicates he was recently hospitalized for over a week for a spontaneous lung collapse, during which time he was diagnosed with a number of other medical conditions including emphysema, apical bullous disease (a type of COPD), hypertension, and kidney disease. The government concedes that Merrill's chronic conditions present "risk factors identified by the CDC as heightening the risk of severe injury or death were the inmate to contract COVID-19." R. Doc. 373 at 12. Indeed, the CDC has indicated that individuals suffering from chronic kidney disease and COPD, among other conditions, are at an increased risk of severe illness from COVID-19, regardless of age.[1] The CDC also indicates that hypertension and having "damaged or scarred lung tissues," as Merrill does, may be associated with an increased risk. Based on the foregoing, Merrill clearly suffers from a number of medical conditions, many of them pulmonary or respiratory, that greatly increase his risk of contracting, suffering from or even dying from COVID-19. Given the nature of these chronic conditions and the ongoing pandemic, these conditions clearly substantially diminish Merrill's ability to administer self-care while incarcerated.

Further, the Court recognizes that Merrill's risk of contracting the virus at Fort Worth FMC increases by the day. Notably, Forth Worth FMC experienced a staggering rate of COVID-

---

[1] Centers for Disease Control and Prevention, Coronavirus Disease 2019: COVID-19: People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

5

19 infections among inmates and staff during the initial months of the pandemic, prompting a Texas federal district court to declare that "BOP's efforts to manage the outbreak at FMC Forth Worth have proven insufficient." *United States v. Johnson*, No. CR H-96-176, 2020 WL 3618682, at *3 (S.D. Tex. July 2, 2020). Although the infection rate has apparently slowed at the facility, cases continue to climb in neighboring counties, and the Court is concerned about the impact of community spread on the facility. Additionally, it appears as though the emergency in the facility may have caused medical staff to initially overlook Merrill's pulmonary symptoms. Troublingly, Merrill's pneumothorax went undiagnosed for days, as staff members allegedly assumed his shortness of breath was caused by COVID-19. R. Doc. 367-1 at 24–27. Only upon performing an x-ray at the insistence of Merrill's boss did the medical team realize that Merrill needed hospitalization, where Merrill was informed that he "likely would not have survived more than two more days if he had not come in." *Id*. at 5. Further, the BOP allegedly paid little attention to Merrill's newly-diagnosed conditions upon his discharge from the hospital and did not impose a plan for sufficient monitoring, follow-up, or preventative care. *Id*. at 13. In sum, although the Court recognizes that the global pandemic has put a serious strain on the BOP and credits the BOP for its efforts to contain the virus and stop its spread, it finds that Merrill will be able to address his medical concerns more safely and effectively outside of prison. Accordingly, extraordinary and compelling reasons exist in this matter.

Third, the Court must be satisfied that Merrill does not pose a danger to the safety of any other person or to the community and that the § 3553(a) factors support his release. Section 3553(a) factors include the nature and circumstances of the charged offense, the history and characteristic of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, have a deterrent effect, and protect the public from future crimes. 18 U.S.C. § 3553(a).

Here, Merrill was sentenced to 280 months in the custody of the BOP for possessing, with the intent to distribute, certain quantities of controlled substances. R. Doc. 204. Although these convictions at the time carried ten-year mandatory minimum sentences, Merrill was sentenced to 280 months due to his designation as a Career Offender. However, his Career Offender status was on premised on non-violent drug possession convictions that occurred during his twenties and two simple robbery convictions that occurred when he was 17 and 20 years old, respectively. At 53, Merrill's most recent violent offense took place 33 years ago. Notably, Merrill has now spent almost twice as long in prison as the statutory mandatory minimum associated with his crimes. At present, he has completed about 76% of his sentence, and it scheduled to be released in less than three years. During his eighteen years of incarceration, he has completed a Drug Education Program, a Commercial Driver's License course, and actively pursued his GED. R. Doc. 367-1 at 31. He consistently maintained a work detail cleaning the facility's administrative compound. *Id.* He has not had a single infraction in over eight years and has never been cited for violence or fighting. *Id.* Further, Merrill has suggested that he will live with a family member in New Orleans or Slidell upon his release, and he is exploring employment opportunities with a cousin in the transportation and shipping industry. *Id.* Based on the length of his completed prison term, his demonstrated rehabilitation, and his underlying medical issues, the Court concludes that Merrill's continued incarceration is no longer necessary to promote any sentencing goals, especially in light of the great risk to Merrill's health and life posed by COVID-19.

## IV.   CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Merrill's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A), R. Doc. 367, is **GRANTED**.

**IT IS FURTHER ORDERED** that Merrill's sentence is **REDUCED** to time-served, with the understanding that the BOP may need a reasonable period of time to finalize his release. The Court stresses that Merrill is to be release as soon as is practicable.

**IT IS FURTHER ORDERED** that the BOP release Merrill for placement at either his brother's residence in New Orleans, Louisiana or his cousin's residence in Slidell, Louisiana. Upon his release, Merrill will begin to serve the supervised release term of five years imposed upon him at sentencing. R. Doc. 204. Merrill is accordingly ordered to contact the United States Probation Office within 72 hours of his release.

**IT IS FURTHER ORDERED** that Merrill's Motion to Vacate/Set Aside/Correct Sentence Pursuant to 18 U.S.C. 3582(c)(1)(B) Retroactive Sentencing Amendment First Step Act Law 2018/Fair Sentencing Act 2010 Public Law 111-220; 124 Stat 2372, R. Doc. 349, is **DENIED AS MOOT**.

New Orleans, Louisiana this 4th day of August, 2020.

_____
Eldon E. Fallon
United States District Judge